SEEGER WEISS LLP
CHRISTOPHER A. SEEGER
DAVID R. BUCHANAN
55 Challenger Road, 6th Floor
Ridgefield Park, NJ  07660
Telephone:  973/639-9100
973/639-9393 (fax)

*Local Counsel*

[Additional counsel appear on signature page.]

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| YUICHI MURAKAMI, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> SYNEOS HEALTH, INC., ALISTAIR MACDONALD, GREGORY RUSH, and JASON MEGGS, <br><br> Defendants. | Case No.:  3:19-cv-07377-MAS-LHG <br><br> Hon. Michael A. Shipp |

### MEMORANDUM OF LAW IN SUPPORT OF THE TEXAS PENSION FUNDS' MOTION TO INTERVENE, STRIKE THE MURAKAMI LEAD PLAINTIFF DEADLINE, AND TRANSFER TO THE <u>EASTERN DISTRICT OF NORTH CAROLINA</u>

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................1

II.   FACTUAL ALLEGATIONS .............................................................5

III.  ARGUMENT.......................................................................................9

    A.    The Texas Pension Funds May Intervene as a Matter of Right ............9

    B.    Simply Extending the Class Period Does Not Require Republication of Notice ....................................................................13

    C.    The Court Should Strike the Improper Notice Published by Counsel in *Murakami* and Require Publication of a Corrected Notice ......................................................................................14

    D.    The *Murakami* Action Must Be Transferred to the Eastern District of North Carolina ..................................................................17

        1.    This Action "Might have been Brought" in the Eastern District of North Carolina ........................................................19

        2.    The Private Factors Weigh in Favor of Transfer ......................20

        3.    The Public-Interest Factors Weigh in Favor of Transfer.........24

IV.   CONCLUSION..................................................................................28

## TABLE OF AUTHORITIES

**Page**

### CASES

*Ardrey v. Fed. Kemper Ins. Co.*,
   142 F.R.D. 105 (E.D. Pa. 1992)..................................................................................9

*AT&T Co. v. MCI Commc'ns Corp.*,
   736 F. Supp. 1294 (D.N.J. 1990)..........................................................................21, 26

*Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*,
   127 F. Supp. 2d 572, 577, 581 (D.N.J. 2001).......................................................17

*Chen-Oster v. Goldman, Sachs & Co.*,
   No. 10 Civ. 6950 (AT), 2015 U.S. Dist. LEXIS 100852
   (S.D.N.Y. Aug. 3, 2015) .........................................................................................10

*Cheney v. Cyberguard Corp.*,
   213 F.R.D. 484 (S.D. Fla. 2003)..............................................................................14

*CIBC World Mkts., Inc. v. Deutsche Bank Sec., Inc.*,
   309 F. Supp. 2d 637 (D.N.J. 2004).....................................................18, 22, 25

*Cont'l Grain Co. v. Barge FBL-585*,
   364 U.S. 19 (1960).................................................................................................25

*Crown, Cork & Seal Co., Inc. v. Parker*,
   462 U.S. 345 (1983)................................................................................................27

*Dickstein v. Able Telcom Holding Corp.*,
   192 F.R.D. 331 (N.D. Ga. 2000) .........................................................................9, 10

*Dube v. Signet Jewelers Ltd.*,
   No. 16-CV-6728 (JMF), 2017 WL 1379385 (S.D.N.Y. Apr. 14, 2017)............13

*Franklin U.S. Rising Dividends Fund v. Am. Int'l Grp., Inc.*,
   No. 13-5805 (ILL), 2014 WL 3748214 (D.N.J. July 29, 2014) ...................20, 21

*Franklin U.S. Rising Dividends Fund v. Am. Int'l Grp., Inc.*,
   No. Civ. A. 2:13-05805 JL, 2014 WL 1555133 (D.N.J. Apr. 14, 2014)............23

# TABLE OF AUTHORITIES

**Page**

*Hevesi v. Citigroup Inc.*,
    366 F.3d 70 (2d Cir. 2004) ........................................................................11, 16

*Hom v. Vale, S.A.*,
    No. 1:15-cv-9539-GHW, 2016 U.S. Dist. LEXIS 28863
    (S.D.N.Y. Mar. 7, 2016) ..................................................................................13

*Huang v. Sonus Networks, Inc.*,
    No. 15-2407 (FLW) (LHG), 2016 WL 1090436 (D.N.J. Mar. 21, 2016)..........21

*In re Bank of Am. Corp., Derivative & Emp. Ret. Income Sec. Act (ERISA) Litig.*
    No. 10CIV275 (PKC), 2011 WL 4538428 (S.D.N.Y. Sept. 29, 2011)........11, 16

*In re Cendant Corp. Litig.*,
    182 F.R.D. 476 (D.N.J. 1998).........................................................................26

*In re CenturyLink Sales Practices and Sec. Litig.*,
    MDL No. 17-2795, 2018 WL 1902725 (D. Minn. Apr. 20, 2018) ....................16

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
    MDL No. 12-2389, 2013 WL 4399215 (S.D.N.Y. Aug. 13, 2013) ...................11

*In re Lucent Techs. Sec. Litig.*,
    221 F. Supp. 2d 472 (D.N.J. 2001)..............................................................26, 27

*In re ShengdaTech, Inc. Secs. Litig.*,
    No. 11 CIV. 1918 (TPG), 2011 U.S. Dist. LEXIS 141695
    (S.D.N.Y. Dec. 6, 2011) ..................................................................................14

*In re Stillwater Mining Co. Sec. Litig.*,
    No. 02 Civ. 2806 (DC), 2003 WL 21087953 (S.D.N.Y. May 12, 2003)...........24

*In re Synovis Life Techs., Inc. Sec. Litig.*,
    No. 04-3008, 2005 U.S. Dist. LEXIS 18187 (D. Minn. Aug. 25, 2005)............13

*In re Telxon Corp. Secs. Litig.*,
    67 F. Supp. 2d 803 (N.D. Ohio 1999) .........................................................12, 16

*In re Thornburg Mortg., Inc., Secs. Litig.*,
    629 F. Supp. 2d 1233 (D.N.M. 2009).............................................................14

iii

# TABLE OF AUTHORITIES

**Page**

*Job Haines Home for the Aged v. Young,*
936 F. Supp. 223 (D.N.J. 1996) .......................................................20, 21, 22, 23

*Jumara v. State Farm Ins. Co.,*
55 F.3d 873 (3d Cir. 1995) ................................................................18, 20, 25

*Kleissler v. United States Forest Serv.,*
157 F.3d 964 (3d Cir. 1998) ......................................................................10

*Lawrence v. Xerox Corp.,*
56 F. Supp. 2d 442 (D.N.J. 1999) ..........................................................25

*Lax v. First Merchs. Acceptance Corp.,*
No. 97 C 2716, 1997 U.S. Dist. LEXIS 12432
(N.D. Ill. Aug. 6, 1997) .............................................................15, 16, 20

*McCausland v. S'holders Mgmt. Co.,*
52 F.R.D. 521 (S.D.N.Y. 1971) ...............................................................9

*McNulty v. J.H. Miles and Co.,*
913 F. Supp. 2d 112 (D.N.J. 2012) ......................................................18, 20, 25

*Metro. Life Ins. Co. v. Bank One, N.A.,*
Nos. 03-1882 (SDW), 2012 WL 4464026 (D.N.J. Sept. 25, 2012) .............23, 24

*Pinker v. Roche Holdings Ltd.,*
292 F.3d 361 (3d Cir. 2002) ...................................................................19

*Ramada Worldwide v. Bellmark Sarasota Airport,*
No. 05-2309 (HAA), 2006 U.S. Dist. LEXIS 96543 (D.N.J. June 15, 2006) ....21

*Santi v. Nat'l Bus. Records Mgmt., LLC,*
722 F. Supp. 2d 602 (D.N.J. 2010) ..........................................................22

*Skwortz v. Crayfish Co., Ltd.,*
No. 00 CIV. 6766 (DAB), 2001 U.S. Dist. LEXIS 15532
(S.D.N.Y. Sept 28, 2001) ..........................................................................16

*Solomon v. Cont'l Am. Life Ins. Co.,*
472 F.2d 1043 (3d Cir. 1973) ....................................................................23

iv

## TABLE OF AUTHORITIES

**Page**

*Thomas v. MagnaChip Semiconductor Corp.*,
No. 14-cv-01160-JST, 2015 U.S. Dist. LEXIS 77288 (N.D. Cal.
June 15, 2015) ...................................................................................................13

*Thomas v. Metro. Life Ins. Co.*,
No. CIV-07-121-F, 2007 U.S. Dist. LEXIS 74789
(W.D. Okla. Oct. 5, 2007) ...............................................................................14

*Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*,
No. 14 Civ. 2814 (ER), 2015 WL 1499657 (S.D.N.Y. Mar. 27, 2015) .............12

*Vaitkueviene v. Syneos Health, Inc.*,
2018 U.S. Dist. LEXIS 125786 (E.D.N.C. May 29, 2018) ...............................15

*Vaitkuevienė v. Syneos Health, Inc. et al.*,
No. 5:18-cv-00029-H-KS (E.D.N.C.)........................................................*passim*

*Van Dusen v. Barrack*,
376 U.S. 612 (1964)...........................................................................................17

*Voilas v. General Motors Corp.*,
173 F.R.D. 389 (D.N.J. 1997)..............................................................................9

*Wendell v. Johnson & Johnson*,
No. 09-3273, 2010 WL 4025624 (D.N.J. Oct. 13, 2010)...................................19

*Yang v. Odom*,
409 F. Supp. 2d 599 (D.N.J. 2006).............................................................22, 27

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
§78aa(a).......................................................................................................19, 20
§78u-4(a)(3)(B)......................................................................................................4
§78u-4(a)(3)(A)(i)(I)..............................................................................................2
§78u-4(a)(3)(B)(ii).............................................................................................26

28 U.S.C. §1404(a) ......................................................................................*passim*

# TABLE OF AUTHORITIES

**Page**

Federal Rules of Civil Procedure
    Rule 23(d)(1)..............................................................................9
    Rule 24(a)(2)..............................................................................9
    Rule 24(b)(2)..............................................................................9
    Rule 24(c)..................................................................................9

## SECONDARY AUTHORITIES

15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* §3847 (2d ed. 1986) ......................................................18

Federal Court Management Statistics (December 31, 2018), https://www.uscourts.gov/sites/default/files/ fcms_na_distprofile1231.2018.pdf.................................................................27

William B. Rubenstein, *Newberg on Class Actions*, §6:38 (5th ed. 2018) .............26

Proposed intervenors San Antonio Fire & Police Pension Fund and El Paso Firemen & Policemen's Pension Fund ("Texas Pension Funds" or "Lead Plaintiffs") are the Court-appointed Lead Plaintiffs in the pending securities class action against Syneos Health, Inc., ("Syneos" or the "Company"), formerly known as INC Research Holdings, Inc. ("INCR"), and others, in the Eastern District of North Carolina. As Lead Plaintiffs, the Texas Pension Funds are authorized to prosecute the claims that plaintiff Yuichi Murakami ("Murakami") purports to assert here. The Texas Pension Funds respectfully submit this memorandum of law in support of their motion to intervene for the limited purposes of: (i) requesting that this Court strike the purported deadline for seeking appointment as Lead Plaintiff in this action; (ii) requiring publication of a corrected notice explaining that the Lead Plaintiff deadline expired on January 30, 2018; and (iii) transferring this action to the Eastern District of North Carolina.

## I.   INTRODUCTION

The securities class action against Syneos and the other defendants named herein began over 15 months ago with the filing of two related securities class actions in the Southern District of New York and the Eastern District of North Carolina.[1]   Those class actions asserted violations of §§10(b) and 20(a) of the

---

[1]   The action filed in the Southern District of New York, *Bermudez v. INC Research Holdings, Inc., et al.*, No. 1:17-cv-09457-PGG, was voluntarily dismissed on April 3, 2018. The action pending in the Eastern District of North

Securities Exchange Act of 1934 ("Exchange Act") on behalf of all purchasers of Syneos common stock between May 10, 2017 and November 8, 2017, inclusive. When the first of those complaints was filed on December 1, 2017, the plaintiff properly published notice informing all Syneos investors that the deadline to move for appointment as Lead Plaintiff in the Syneos securities class action was 60 days from the publication of that notice, or January 30, 2018, as required by the Private Securities Litigation Reform Act of 1995 ("PSLRA"). 15 U.S.C. 78u-4(a)(3)(A)(i)(I). On that deadline, two members of the Class – including the Texas Pension Funds – moved for appointment as Lead Plaintiffs, though the second movant eventually withdrew his motion for appointment as lead plaintiff. On May 29, 2018, Magistrate Judge Kimberly A. Swank of the Eastern District of North Carolina appointed the Texas Pension Funds as Lead Plaintiff and approved their selection of counsel. *Vaitkuevienė*, ECF No. 20. Since then, the Texas Pension Funds have been actively litigating the *Vaitkuevienė* Action in the Eastern District of North Carolina.

On July 30, 2018, the Texas Pension Funds filed an Amended Complaint for Violation of the Federal Securities Laws ("Amended Complaint"), alleging, among other things, that statements regarding the Company's expected revenue growth

Carolina is *Vaitkuevienė v. Syneos Health, Inc. et al.*, No. 5:18-cv-00029-H-KS (E.D.N.C.) (the "*Vaitkuevienė* Action"). Citations to the *Vaitkuvienė* Action are referred to as "*Vaitkuevienė*, ECF No(s). __."

were materially false and misleading.  *See Vaitkuevienė*, ECF No. 35, attached hereto as Ex. A.[2]  On September 20, 2018, Defendants moved to dismiss the Amended Complaint, which the Texas Pension Funds opposed.  *Vaitkuevienė*, ECF Nos. 54-55, 60.  That motion, and the Texas Pension Funds' Motion to Exclude or, Alternatively, to Convert Defendants' Motion to Dismiss to a Motion for Summary Judgment, has been fully briefed and is pending resolution since February 5, 2019. *Vaitkuevienė*, ECF Nos. 65, 66.

On March 1, 2019, despite the pending, related *Vaitkuevienė* Action, and the Texas Pension Funds' status as Lead Plaintiff in that action, plaintiff Murakami initiated the instant action (the "*Murakami* Action").  The filing of that action was prompted by the Company's February 27, 2019 announcement that it was delaying the release of its Form 10-K for the year ended December 31, 2018, because the U.S. Securities and Exchange Commission ("SEC") notified the Company it was investigating the Company's revenue-related practices (including the revenues Syneos reported during the Class Period in the *Vaitkuevienė* Action).  ECF No. 1. Counsel for Murakami, the Rosen Law Firm, then improperly published notice purporting to inform investors in Syneos securities that they have until April 30, 2019 to seek appointment as Lead Plaintiff in the *Murakami* Action.  *See* Ex. B.

---

[2]   All "¶__" and "¶¶__" references are to the Amended Complaint for Violations of the Federal Securities Laws ("Amended Complaint" or "AC").

As detailed further below, however, the allegations in *Murakami* pertain directly to the allegations alleged in the *Vaitkuevienė* Action.

The notice published by the Rosen Law Firm creates significant confusion for Class members. Pursuant to the PSLRA, there can be a single Lead Plaintiff, and related securities class actions should be promptly consolidated to permit coordinated prosecution of all claims by the Lead Plaintiff. 15 U.S.C. §78u-4(a)(3)(B). Here, despite the extended class period alleged in *Murakami*, all investors in Syneos securities received due notice of the claims pending in the Eastern District of North Carolina and the deadline to seek appointment as Lead Plaintiff.

As the court-appointed Lead Plaintiff over these claims, the Texas Pension Funds move to intervene in this case for the limited purposes of protecting the Class by seeking to have the purported deadline noticed by the Rosen Law Firm stricken, to require publication of a new notice to provide correct information to the Class, and to have this action transferred to the Eastern District of North Carolina, pursuant to 28 U.S.C. §1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice," where it can then be properly consolidated with the *Vaitkuevienė* Action.

As detailed further below, the factors relevant to a §1404(a) transfer analysis all weigh heavily in favor of transferring this action to the Eastern District of North

Carolina:  Syneos is headquartered in the Eastern District of North Carolina; the Company's officers and directors, including the individually named defendants, work and reside there; and the statements made in furtherance of Defendants' alleged fraud were issued there.  Indeed, Syneos' only connections to this District, as alleged in the *Murakami* complaint, is that "the alleged misstatements entered and the subsequent damages took place in this judicial district, and the Company has facilities and conducts substantial business in this district."  ECF No. 1, ¶4. North Carolina is therefore the locus of operative facts and the most convenient venue for the witnesses likely to be called in this litigation, as well as the parties. Additionally, because the Eastern District of North Carolina has already appointed lead plaintiffs in the *Vaitkuevienė* Action pending there, the parties and the putative class may face inconsistent litigation schedules and duplicative proceedings without immediate transfer.

## II.    FACTUAL ALLEGATIONS

Syneos is the result of a merger between INCR, a contract research organization ("CRO") that provided clinical development services across various therapeutic areas in the biopharmaceutical and medical device industries, and inVentiv Health, Inc. ("inVentiv"), a biopharmaceutical services provider that possessed a lucrative contract commercial organization ("CCO segment").

The operative Amended Complaint, filed by the Texas Pension Funds on July 30, 2018 in the *Vaitkuevienė* Action alleges, among other things, that Defendants repeatedly made material misrepresentations and omissions regarding the Company's projected revenues and growth prospects. *See, e.g.*, AC ¶¶100(d), 105(d), 109(d), 115(d), 131(d), 241(d), 100(e), 105(e), 109(e), 115(e), 131(e), 241(e).

After the filing of the Amended Complaint, on February 27, 2019, Defendant Syneos publicly filed with the U.S. Securities and Exchange Commission ("SEC") a Notification of Late Filing ("Notification"), a true and correct copy of which is attached hereto as Exhibit C. Through the Notification, Syneos indicated that, *inter alia*:

- [The Company] is unable to file its Form 10-K for the year ended December 31, 2018 (the "Form 10-K") by March 1, 2019, without unreasonable effort or expense, because our management is conducting a review of the Company's internal control over financial reporting in conjunction with finalizing the Form 10-K (Ex. C at 2);

- On February 21, 2019, the [SEC] notified the Company that it has commenced an investigation into the Company's revenue accounting policies, internal controls and related matters, and requested that the Company retain certain documents for the periods beginning with January 1, 2017 (Ex. C at 2); and

- [T]he Audit Committee of the Company's Board of Directors is conducting an independent review of the Company's revenue accounting policies, internal controls and related matters with the assistance of outside counsel and accounting advisors. (Ex. C at 2).

As a result of these investigations by the SEC and the Company (together, "Investigations"), the Rosen Law Firm commenced the *Murakami* Action on March 1, 2019. The *Murakami* Action – which pleads violations of Sections 10(b) and 20(a) of the Exchange Act against virtually identical defendants, for a class period that begins on the same day as that pled in the *Vaitkueviené* Action (May 10, 2017 through February 27, 2019) – alleges claims specifically relating to and further supporting the claims pled in the Amended Complaint. Specifically, *Murakami* alleges defendants made false and/or misleading statements regarding the Company's reported revenues – the very same statements that the Texas Pension Funds allege to be false and misleading in the *Vaitkueviené* Action.

The Investigations pertain directly to the allegations in the *Vaitkueviené* Action and, in fact, further support the allegations in the Amended Complaint, as they focus on the Company's "revenue accounting policies, internal controls and related matters."[3] Furthermore, the Investigations concern the same time period covered by the Texas Pension Funds' allegations. The Investigations focus on the accounting practices and policies associated with the Company's reported revenues for the period beginning January 1, 2017. Similarly, the *Vaitkueviené* Action

---

[3] On March 7, 2017, the Texas Pension Funds filed a notice of recent events in the *Vaitkueviené* Action, alerting the Court to these developments and informing that, as further details emerge, the Amended Complaint may require amendment to include the Notification and results of the Investigations. *Vaitkueviené* ECF No. 72.

alleges that Defendants made misleading statements about the Company's reported revenues beginning on May 10, 2017, when Syneos first released its financial results for the quarter beginning January 1, 2017. *See* AC ¶¶96-140. The *Vaitkuevienė* Action further allege that Defendants continued those revenue-related misrepresentations (and/or omissions) through November 9, 2017. *See id*.

Additionally, the *Vaitkuevienė* Action alleges that Defendants took part in at least ten merger-related meetings between January and May 2017 to conduct financial due diligence. *See* AC ¶63. Accordingly, the *Vaitkuevienė* Action's allegations and the proposed Class Period (May 10, 2017 to November 8, 2017) fall squarely within the disclosed time frame of the Investigations. *See* AC ¶13.

Finally, the Section 14(a) claim alleged (only) in the *Vaitkuevienė* Action concerns the accuracy of material financial information in proxy materials utilized by the Company to solicit shareholder approval for the Company's merger with inVentiv Health, Inc. in 2017. *See* AC ¶¶229-234. The proxy materials included the Company's financial statements for the quarter beginning January 1, 2017, and were disseminated to investors between May 10, 2017, and July 19, 2017. *See id*. Thus, the Company's recent disclosure is inextricably intertwined with the Section 10(b) and Section 14(a) Exchange Act claims pled in the *Vaitkuevienė* Action against Defendants.

## III.   ARGUMENT

### A.   The Texas Pension Funds May Intervene as a Matter of Right

The Texas Pension Funds satisfy the standards for intervention, and should be permitted to intervene in order to seek the relief requested herein to protect the class they were appointed to represent.   Pursuant to Federal Rule of Civil Procedure 24, upon timely motion, a party may intervene as of right if that party "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a)(2).[4]  Interventions in class actions are liberally allowed because of the policy expressed by Rule 23, providing that the "court may issue orders . . . to protect class members and fairly conduct the action."   Fed. R. Civ. P. 23(d)(1)[5] and (B); *see also Dickstein v. Able Telcom*

---

[4]   Fed. R. Civ. P. 24(c) requires that a motion to intervene "be accompanied by a pleading that sets out the claim or defense for which intervention is sought."   In that regard, the Texas Pension Funds adopt as their pleading the Amended Complaint in the *Vaitkuevienė* Action, which was filed in the U.S. District Court for the Eastern District of North Carolina on July 30, 2018.   Ex. A.   Courts have allowed an intervenor to adopt an already-filed pleading.  *See, e.g., McCausland v. S'holders Mgmt. Co.*, 52 F.R.D. 521, 524 (S.D.N.Y. 1971); *Ardrey v. Fed. Kemper Ins. Co.*, 142 F.R.D. 105, 116 n.19 (E.D. Pa. 1992).   In the alternative, the Texas Pension Funds seek permissive intervention under Fed. R. Civ. P. 24(b)(2), which this Court may grant for the same reasons.  *See, e.g., Voilas v. General Motors Corp.*, 173 F.R.D. 389, 395 n.5 (D.N.J. 1997).

[5]   Citations and footnotes are omitted and emphasis added throughout unless otherwise indicated.

*Holding Corp.*, 192 F.R.D. 331, 334 (N.D. Ga. 2000) ("What is at stake here is control over the right to prosecute the class action. Therefore, the motion to intervene should be granted.").

The Third Circuit recognizes four requirements to intervene as of right: (1) the motion to intervene has been timely filed; (2) the proposed intervenor claims an interest relating to the case; (3) the ability to protect this interest could possibly be impaired in the absence of intervention; and (4) no adequate representation of the proposed intervenor's interest by the existing parties to the action. *See Kleissler v. United States Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998).

As an initial matter, the Texas Pension Funds' motion is timely as it is filed prior to the Lead Plaintiff deadline advertised with the *Murakami* Action. *See, e.g., Chen-Oster v. Goldman, Sachs & Co.*, No. 10 Civ. 6950 (AT)(JCF), 2015 U.S. Dist. LEXIS 100852, at *13 (S.D.N.Y. Aug. 3, 2015). Further, there will be no prejudice to the parties in the *Murakami* Action as it is in its early stages. Instead, the Texas Pension Funds seek to prevent the Court from needlessly expending judicial resources deciding issues in an action that should ultimately be consolidated and subsumed within the pending (and related) *Vaitkuevienė* Action.

Also, the Texas Pension Funds, as the Court-appointed Lead Plaintiffs with the sole authority to assert the claims purportedly brought in this case, have a fiduciary duty to protect all members of the Class, and unquestionably have an

interest in the subject matter of the action.  *See* §II *supra.*  The *Murakami* Action not only threatens to confuse the Class by wrongly advertising a new Lead Plaintiff deadline, but also risks dividing the class action and causing difficulties in the Texas Pension Funds' ability and authority to manage the action as a whole.

> As explained in *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*:
>
> [I]n a securities class action, a lead plaintiff is empowered to control the management of the litigation as a whole . . . . Permitting other plaintiffs to bring additional class actions now, with additional lead plaintiffs and additional lead counsel, would interfere with Lead Plaintiffs' ability and authority to manage the [action].

No. 09 MDL 2058 (DC), 2010 U.S. Dist. LEXIS 37799, at *6 (S.D.N.Y. Apr. 9, 2010) (citing *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 n.13 (2d Cir. 2004)).  To hold otherwise would invalidate the purpose of the Lead Plaintiff provisions of the PSLRA, invite "lawyer-driven litigation that the PSLRA seeks to avoid, and would likely promote near-endless skirmishes" analogous to the instant disruption, meddling with the Lead Plaintiff's ability to efficiently manage the class action litigation.  *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, MDL No. 12-2389, 2013 WL 4399215, at *4 (S.D.N.Y. Aug. 13, 2013) (citing *In re Bank of Am. Corp., Derivative & Emp. Ret. Income Sec. Act (ERISA) Litig.* No. 10CIV275 (PKC), 2011 WL 4538428, at *2 (S.D.N.Y. Sept. 29, 2011)).  Such a result would allow usurpation of Lead Plaintiff's authority and invite other enterprising litigants to file any number of class actions asserting claims that

vary in some insignificant way from the claims that the Lead Plaintiff has chosen to assert, much like the *Murikami* Action filing. *See Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*, No. 14 Civ. 2814 (ER), 2015 WL 1499657, at *8 (S.D.N.Y. Mar. 27, 2015) (citing *In re Telxon Corp. Secs. Litig.*, 67 F. Supp. 2d 803, 819 (N.D. Ohio 1999) ("This result would 'effectively render the strict timeliness set forth in the PSLRA meaningless, and would nullify Congress's attempt to expedite the lead plaintiff appointment process.'")).    Since the February 27, 2019 announcement, the Texas Pension Funds have filed a Notice of Recent Events informing the North Carolina court about the announcement and its relatedness to the action pending before it, and have been hard at work investigating the facts and determining whether any further amendment to the operative complaint is required.

The Texas Pension Funds' interests and the interest of the Class they were appointed to represent are clearly threatened by the *Murakami* Action and the Rosen Law Firm's improper notice, and the Texas Pension Funds' interests are not adequately represented by any of the parties here.  Clearly, Murakami – and his counsel – cannot represent the Texas Pension Funds' interests in correcting the inaccurate notice it published, as his goal is to improperly restart the Lead Plaintiff process for investors in Syneos securities, which would only delay the prosecution of investors' claims.  Accordingly, the Court should permit the Texas Pension

Funds to intervene to correct the confusion caused by the Rosen Law Firm's improper notice.

### B. Simply Extending the Class Period Does Not Require Republication of Notice

Decisions from courts around the country make clear that "the weight of the case law" suggest that no new notice is required upon extension of the class period *In re Synovis Life Techs., Inc. Sec. Litig.*, No. 04-3008 ADM/AJB, 2005 U.S. Dist. LEXIS 18187, at *3 n.3 (D. Minn. Aug. 25, 2005) (collecting cases); *see also Dube v. Signet Jewelers Ltd.*, No. 16-CV-6728 (JMF), 2017 WL 1379385, at *2 (S.D.N.Y. Apr. 14, 2017) (new notice publication and the reopening of the lead plaintiff process is required only when later-filed complaints "dramatically alter[] the contours of the lawsuit."); *Thomas v. MagnaChip Semiconductor Corp.*, No. 14-cv-01160-JST, 2015 U.S. Dist. LEXIS 77288, at *10-*16 (N.D. Cal. June 15, 2015) (finding no new notice was required because the new information "center[ed] on the same factual scenario," "[n]o new classes of securities or groups of plaintiffs [was] added," "no party [] identified a potentially more appropriate lead plaintiff that was excluded from the constraints of the original complaint," and the new complaint did not "substantially alter the claims or class members").[6]

---

[6] *See also Hom v. Vale, S.A.*, No. 1:15-cv-9539-GHW, 2016 U.S. Dist. LEXIS 28863, at *11-*12 (S.D.N.Y. Mar. 7, 2016) (finding republication of notice not required under the PSLRA where the subsequent action asserts "'substantially the same claim or claims . . . only the plaintiff or plaintiffs in the first filed action shall

- 13 -

As discussed in detail above, the *Murikami* Action does not dramatically or substantially alter the contours of the *Vaitkueviene* Action.  In fact, the "new information" it seeks to add relates specifically to and further supports the allegations in the *Vaitkueviene* Action.  The *Murikami* Action asserts no new theories of securities fraud and merely expands the class period from May 10, 2017 through November 8, 2017 to May 10, 2017 through February 27, 2019.  Merely extending the Class Period to include that additional information simply does not rise to the level of supporting the publication of a new notice and reopening the lead plaintiff appointment process.

### C.    The Court Should Strike the Improper Notice Published by Counsel in *Murakami* and Require Publication of a Corrected Notice

On January 30, 2018, the Texas Pension Funds and one other investor (that ultimately withdrew his motion), filed a timely motion seeking appointment as

---

be required to cause notice to be published."'); *In re ShengdaTech, Inc. Secs. Litig.*, No. 11 CIV. 1918 (TPG), 2011 U.S. Dist. LEXIS 141695, at *8 (S.D.N.Y. Dec. 6, 2011) (recognizing courts "disfavor republication of notice under PSLRA when a class period is extended beyond the period contained in the first-filed securities class action."); *In re Thornburg Mortg., Inc., Secs. Litig.*, 629 F. Supp. 2d 1233, 1241 (D.N.M. 2009) (despite longer class period and new claims, finding original notice "fulfilled its purpose" of adequately "alert[ing] prospective lead plaintiffs of the pendency of an action."); *Thomas v. Metro. Life Ins. Co.*, No. CIV-07-121-F, 2007 U.S. Dist. LEXIS 74789, at *8 (W.D. Okla. Oct. 5, 2007) ("[C]ourts have not generally required new notice where [the extension of the class period] is the only change in the claims."); *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 503 (S.D. Fla. 2003) (finding additional notice not required where the original complaint extended the class period by 11 months).

Lead Plaintiff in the *Vaitkueviene* Action. Magistrate Judge Swank granted the Texas Pension Funds' motion and appointed them Lead Plaintiff on May 29, 2018. *See Vaitkueviene v. Syneos Health, Inc.*, 2018 U.S. Dist. LEXIS 125786 (E.D.N.C. May 29, 2018). After Murakami filed this action on March 1, 2019, over 15 months since the Eastern District of North Carolina action was commenced and nine months after the Texas Pension Funds' appointment, Murakami and his counsel incorrectly informed investors that they have until April 30, 2019 to seek appointment as Lead Plaintiff in this case. *See* Ex. B at 1.

This notice is plainly improper. Because the allegations in the *Murakami* complaint are related to and further support the allegations pled in the *Vaitkueviene* Action – the preexisting and currently pending Syneos securities class action that the Texas Pension Funds are charged with prosecuting as Lead Plaintiff – there is no reason that this case should not be consolidated with those actions as soon as it is transferred. First, the new Lead Plaintiff deadline Murakami and his counsel purport to establish by publishing notice on March 1, 2019 should be disregarded, and any motions filed in response to that notice should be denied. The PSLRA imposes a 60-day deadline for filing motions seeking Lead Plaintiff appointment, and courts strictly enforce that deadline to ensure a leadership structure for related securities class actions is in place "as quickly as possible." *Lax v. First Merchs. Acceptance Corp.*, No. 97 C 2716, 1997 U.S. Dist. LEXIS 12432, at *15 (N.D. Ill.

- 15 -

Aug. 6, 1997).   For this reason, courts have recognized that the publication of subsequent notice to restart the Lead Plaintiff appointment process "would clearly thwart the intent of the PSLRA." *Id*.; *see also Telxon Corp.*, 67 F. Supp. 2d at 818 ("The PSLRA is unequivocal and allows for no exceptions.  All motions for lead plaintiff must be filed within sixty (60) days of the published notice for the first-filed action."); *In re CenturyLink Sales Practices and Sec. Litig.*, MDL No. 17-2795 (MJD/KMM), 2018 WL 1902725, at * 6 (D. Minn. Apr. 20, 2018) ("Because no new notice was required, the deadline to file a request to be Lead Plaintiff expired August 21, 2017, and IMG's motion is time-barred.").

To that end, courts routinely reject motions filed after the 60-day deadline. *See, e.g.*, *Skwortz v. Crayfish Co., Ltd.*, No. 00 CIV. 6766 (DAB), 2001 U.S. Dist. LEXIS 15532, at *17 (S.D.N.Y. Sept 28, 2001) (refusing to consider untimely lead plaintiff motion even though no other timely motions were before the court because "[t]he mandatory nature of the 60 day requirement follows from the structure of the PSLRA itself.").   Strictly construing the 60-day deadline promulgated by the PSLRA ensures that a lead plaintiff is appointed "to exercise control over the litigation ***as a whole***."   *Hevesi*, 366 F.3d at 82 n.13.   Once a lead plaintiff is appointed, it is vested with the authority to prosecute all related claims – a responsibility that necessarily includes the "authority to decide what claims to assert on behalf of the class."   *Bank of Am.*, 2010 U.S. Dist. LEXIS 37799, at *6.

- 16 -

Permitting Murakami to institute a separate Lead Plaintiff process for a class that is already represented by court-appointed Lead Plaintiffs in another federal court runs directly counter to the PSLRA, and would lead to significant inefficiency and needless expenditure of judicial resources.

Next, the Court should require that a corrected notice be published informing investors that the deadline to file motions for lead plaintiff has passed, as Murakami's notice is likely to result in inefficiency and a waste of judicial resources if not corrected. *See Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 127 F. Supp. 2d 572, 577, 581 (D.N.J. 2001) (describing the notice requirements and noting a Court's "independent duty to scrutinize the published notice"). As explained above, any motions filed in response to Murakami's improper notice are untimely, and should be denied as such.

### D.     The *Murakami* Action Must Be Transferred to the Eastern District of North Carolina

Pursuant to 28 U.S.C. §1404(a), a court may transfer a civil action "[f]or the convenience of parties and witnesses, [or] in the interest of justice . . . to any other district or division where it might have been brought." The underlying goal of the transfer statute is "to prevent the waste 'of time, energy and money' and to 'protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Transfer under 28 U.S.C. §1404(a) necessitates two findings: "that (1) the case 'might have been

- 17 -

brought' in the district to which he asks the court to transfer it, and (2) the proposed transferee court would be a more convenient forum for the litigation." *CIBC World Mkts., Inc. v. Deutsche Bank Sec., Inc.*, 309 F. Supp. 2d 637, 643 (D.N.J. 2004).

In determining whether "on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum," courts in the Third Circuit consider various private and public factors. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (quoting 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* §3847 (2d ed. 1986)); *McNulty v. J.H. Miles and Co.*, 913 F. Supp. 2d 112, 115 (D.N.J. 2012). As discussed below, these factors clearly warrant transfer to the Eastern District of North Carolina, where the related first-filed action, the *Vaitkuevienė* Action, is currently pending. Plaintiff could and should have brought this action in North Carolina, as it is the state where Syneos is headquartered, the Individual Defendants reside, relevant witnesses and documents are located, and parallel litigation is pending. Moreover, litigating this case in North Carolina will result in substantial efficiencies at no discernible cost to plaintiff, who is not a resident of this District (or of the United States, for that matter). *See* ECF No. 4. Thus, the Court should grant the Texas Pension Funds' Motion and transfer this action to the Eastern District of North Carolina.

### 1. This Action "Might have been Brought" in the Eastern District of North Carolina

There can be no dispute that this action "might have been brought" in the Eastern District of North Carolina as an almost identical lawsuit is already pending there.  Courts in the Third Circuit find this requirement to be satisfied so long as the transferee court "has (1) subject matter jurisdiction over the claims; (2) personal jurisdiction over the parties; and (3) is a proper venue."  *Wendell v. Johnson & Johnson*, No. 09-3273, 2010 WL 4025624, at *2 (D.N.J. Oct. 13, 2010).  Each of these factors is satisfied in this case.

Section 27 of the Exchange Act grants district courts subject matter jurisdiction over actions arising under the Exchange Act.  *See* 15 U.S.C. §78aa(a).  Moreover, the Eastern District of North Carolina would also have personal jurisdiction over the Defendants, not only because they are residents of North Carolina, but because Section 27 provides for personal jurisdiction by way of authorizing nation-wide service of process. *See id.*; *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 369 (3d Cir. 2002) ("Where Congress has spoken by authorizing nationwide service of process, therefore, as it has in the [Exchange] Act, the jurisdiction of a federal court need not be confined by the defendant's contacts with the state in which the federal court sits.").  Finally, because all of the Defendants are either an "inhabitant" of or "transact[] business" in North Carolina,

- 19 -

venue is proper under Section 27. *See* 15 U.S.C. §78aa(a). This action certainly could and should have been brought in the Eastern District of North Carolina.

### 2. The Private Factors Weigh in Favor of Transfer

The private-interest factors are plainly in favor of a transfer to the Eastern District of North Carolina. These factors include:

> [1] [P]laintiff's forum preference as manifested in the original choice; [2] [T]he defendant's preference; [3] [W]hether the claim arose elsewhere; [4] [T]he convenience of the parties as indicated by their relative physical and financial condition; [5] [T]he convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and [6] [T]he location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*McNulty*, 913 F. Supp. 2d at 115 (quoting *Jumara*, 55 F.3d at 879).

***First***, given the nature of the case, the Court should afford Murakami's selection of a New Jersey forum no weight. In the context of a motion to transfer under 28 U.S.C. §1404(a), a plaintiff's interest in preserving his selected forum is diminished when he sues in a representative capacity, such as in a class action. "[I]n class actions . . . the class representative's choice of forum is entitled to lessened deference" because "the named plaintiff's testimony and other input is likely to be minimal," and "a multitude of states could have interests in seeing their citizens' complaints justly addressed." *Job Haines Home for the Aged v. Young*, 936 F. Supp. 223, 228 (D.N.J. 1996). Moreover, a plaintiff's choice of forum is afforded less weight "when a plaintiff has chosen a forum that is not [his/her]

- 20 -

home." *Franklin U.S. Rising Dividends Fund v. Am. Int'l Grp., Inc.*, No. 13-5805 (ILL), 2014 WL 3748214, at *4 (D.N.J. July 29, 2014).

Likewise, a court will give less deference to a plaintiff's choice where "the operative facts of a lawsuit occur outside the forum selected by the plaintiff." *AT&T Co. v. MCI Commc'ns Corp.*, 736 F. Supp. 1294, 1306 (D.N.J. 1990); *see, e.g.*, *Ramada Worldwide v. Bellmark Sarasota Airport*, No. 05-2309 (HAA), 2006 U.S. Dist. LEXIS 96543, at *7 (D.N.J. June 15, 2006) (giving less weight to plaintiff's choice of venue where New Jersey had little connection with dispute and operative facts occurred in another forum).

Murakami is a resident of Japan, not New Jersey, ECF No. 4, and the complaint contains no allegations that any of the conduct giving rise to the claims at issue occurred in New Jersey.[7] Therefore, this Court should give no deference to the fact that Plaintiff filed this action in New Jersey. *See, e.g.*, *Huang v. Sonus Networks, Inc.*, No. 15-2407 (FLW) (LHG), 2016 WL 1090436, at *3 (D.N.J. Mar. 21, 2016) (transferring action where operative facts, including alleged fraudulent misstatements, occurred in another venue); *Job Haines*, 936 F. Supp. at 229-30 (transferring putative securities fraud class action in part because challenged

---

[7]   The fact that Syneos has "facilities" in New Jersey, does not alter the fact that the claims arose in North Carolina where the alleged misstatements and omissions were made, the Defendants reside, and Syneos is headquartered. *See infra*. Thus, the relevant evidence is likely located in North Carolina, not New Jersey.

statements were made from company headquarters in California); *Santi v. Nat'l Bus. Records Mgmt., LLC*, 722 F. Supp. 2d 602, 607 (D.N.J. 2010) (transferring action where "events giving rise to th[e] claim occurred" in another venue).

**Second**, the convenience of the parties and witnesses, along with the location of relevant documents, supports transfer to the Eastern District of North Carolina. Currently, Defendants are defending the *Vaitkuevienė* Action in the Eastern District of North Carolina. Requiring them "to defend factually and legally related cases" in both North Carolina and New Jersey "would definitely cause them inconvenience that could be eliminated if the case were transferred." *CIBC*, 309 F. Supp. 2d at 650. Moreover, Syneos' headquarters are in North Carolina and the Individual Defendants reside in North Carolina. Litigating the case in the Eastern District of North Carolina would promote the interests of efficiency and convenience, as it would reduce the expense and inconvenience that the Defendants will incur when attending court proceedings.

In contrast, this District is not any more convenient for Murakami or members of the putative class. Murakami is a resident of Japan with no discernable ties to New Jersey, and putative class members are located throughout the country. *See Yang v. Odom*, 409 F. Supp. 2d 599, 607 (D.N.J. 2006) (transferring putative securities fraud class action in part because "potential class members are apparently located throughout the country"); *Job Haines*, 936 F.

- 22 -

Supp. at 231 (finding defendants won "'convenience of the parties' analyses . . . hands down" where defendants were located in alternative forum and plaintiffs sued as nationwide class); *see also Franklin U.S. Rising Dividends Fund v. Am. Int'l Grp., Inc.*, No. Civ. A. 2:13-05805 JL, 2014 WL 1555133, at *8 (D.N.J. Apr. 14, 2014) (finding that where plaintiff was resident of neither New York nor New Jersey, both fora were equally inconvenient), *aff'd*, No. 13-5805 (ILL), 2014 WL 3748214 (D.N.J. July 29, 2014).[8]  Consequently, the "convenience of the parties" weighs in favor of transfer.

**Third**, New Jersey has virtually no connection to the allegations of the Complaint.  *See Metro. Life Ins. Co. v. Bank One, N.A.*, Nos. 03-1882 (SDW), 2012 WL 4464026, at *6 (D.N.J. Sept. 25, 2012) (to determine where claims arose, courts examine "'which forum contains the center of gravity of the dispute, its events and transactions'").   Here, Murakami's claims are based on alleged misrepresentations and omissions, which "'are deemed to occur in the district where they were transmitted or withheld.'"  *Metro. Life*, 2012 WL 4464026, at *6 ("When examining claims for 'misrepresentation on a motion to transfer venue, 'misrepresentations and omissions are deemed to occur in the district where they were transmitted or withheld, not where they are received.'").  Syneos issued the

---

[8]   Murakami's counsel's location is irrelevant.  *See Solomon v. Cont'l Am. Life Ins. Co.*, 472 F.2d 1043, 1047 (3d Cir. 1973) ("[t]he convenience of counsel is not a factor to be considered" in §1404 analysis).

- 23 -

statements at issue from its North Carolina headquarters.  Thus, this factor supports transfer.  *See Metro. Life*, 2012 WL 4464026, at *6 ("Numerous courts have transferred claims to districts where the alleged misrepresentations were made, and not where the alleged misrepresentations were received or relied upon.").

**Fourth**, the "convenience of witnesses" and the "location of books and records" factors favor the Eastern District of North Carolina.  The relevant witnesses are likely located in North Carolina.  *See In re Stillwater Mining Co. Sec. Litig.*, No. 02 Civ. 2806 (DC), 2003 WL 21087953, at *4 (S.D.N.Y. May 12, 2003) (explaining that in securities class actions the "key witnesses" are generally "officers and employees of [the issuer] who participated in drafting or distributing allegedly false and misleading statements").  Syneos officers, who are alleged to have made or been involved in the dissemination of the false and misleading statements, are presumably key witnesses.  All of the Individual Defendants reside in North Carolina, as is likely the case for other "key witnesses," which may include employees who work at Syneos' North Carolina headquarters.  Similarly, the relevant documentary evidence is most likely located in Syneos' North Carolina headquarters.

### 3.    The Public-Interest Factors Weigh in Favor of Transfer

The public-interest factors are likewise in favor of a transfer to the Eastern District of North Carolina.  These factors include:

> [1] the enforceability of the judgment; [2] practical considerations that could make the trial easy, expeditious, or inexpensive; [3] the relative administrative difficulty in the two fora resulting from court congestion; [4] the local interest in deciding local controversies at home; [5] the public policies of the fora; and [6] the familiarity of the trial judge with the applicable state law in diversity cases.

*McNulty*, 913 F. Supp. 2d at 115 (quoting *Jumara*, 55 F.3d at 879-80).[9]

Where, as here, related litigation is pending in another judicial district, courts routinely favor transfer pursuant to 28 U.S.C. §1404(a). In such instances, "transferring a case serves not only private interests but also the interests of justice because it eliminates the possibility of inconsistent results, and conserves judicial resources." *CIBC*, 309 F. Supp. 2d at 651. Naturally, "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that §1404(a) was designed to prevent." *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960); *CIBC*, 309 F. Supp. 2d at 651 (same); *Lawrence v. Xerox Corp.*, 56 F. Supp. 2d 442, 454 (D.N.J. 1999) (same). This is especially true when parallel

---

[9]  Most of the public-interest factors are neutral or have no bearing on this case. For example, interest in the "enforceability of the judgment" is not relevant here because the judgment will be enforceable in either jurisdiction. Similarly, the public policies of North Carolina and New Jersey are irrelevant to the federal securities law violations alleged in the Complaint, and thus are neutral on the issue of transfer. Moreover, the interest in litigating "local" controversies at home favors neither jurisdiction, because the federal securities law claims are not "local" by nature. This case is not a diversity case, so the "trial judge's familiarity with the applicable state law" is irrelevant.

actions are both putative class actions. *See* William B. Rubenstein, *Newberg on Class Actions*, §6:38 (5th ed. 2018) ("Courts typically consider the pendency of related litigation in the proposed transferee district to weigh in favor of transfer. This is particularly true if the case pending in the transferee district is a competing class action."). Accordingly, "[d]istrict courts frequently transfer cases when the record indicates a related action is pending in an appropriate alternative forum," *AT&T*, 736 F. Supp. at 1307-08, and in doing so favor the forum where the first-filed action is pending, *see id.* ("Where transfer of related cases is contemplated, 'the prior pending action has priority in venue.'"); *see also supra* (discussing the first-filed rule).

Moreover, a transfer to the Eastern District of North Carolina, where the first-filed related action is pending, would permit the consolidation contemplated by the PSLRA. The PSLRA "directs that cases should be consolidated where, as here, there is 'more than one action on behalf of a class asserting substantially the same claim or claims.'" *In re Cendant Corp. Litig.*, 182 F.R.D. 476, 478 (D.N.J. 1998); *see* 15 U.S.C. §78u-4(a)(3)(B)(ii) (directing consolidation of securities class actions that assert "substantially the same claim or claims"). Indeed, this Court has recognized that consolidation of putative securities class actions that share substantially similar subject matter promotes the interests of fairness and judicial economy by avoiding the "'burdens of multiple lawsuits.'" *In re Lucent Techs.*

- 26 -

*Sec. Litig.*, 221 F. Supp. 2d 472, 480 (D.N.J. 2001) (quoting *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 353 (1983)).

As discussed above, both cases allege violations of the Exchange Act stemming from material misrepresentations and omissions regarding Syneos' revenues. The cases are also brought on behalf of overlapping putative classes. Therefore, transfer would allow these related cases to be appropriately consolidated.

The relative court congestion factor also supports transfer to Eastern District of North Carolina. The median time to trial in the most recent twelve-month period, shows that median time to trial was 40.6 months in the Eastern District of North Carolina and 47.2 months in this District. *See* Federal Court Management Statistics (December 31, 2018), https://www.uscourts.gov/sites/default/files/ fcms_na_distprofile1231.2018.pdf. As a result, transfer to the Eastern District of North Carolina would serve to alleviate congestion in this District and provide the parties a more expeditious path to trial.

Finally, transferring to the forum "that is geographically the most convenient to the majority of participants" also supports the public interest in making trial easy, expeditious, and inexpensive. *See Yang*, 409 F. Supp. 2d at 609. Here, that location is unquestionably North Carolina. As explained above, the majority of the relevant witnesses, including the Individual Defendants and other Syneos

employees, are in North Carolina, along with relevant evidence, which is likely to be found at Syneos' North Carolina headquarters.  Transferring this case to the Eastern District of North Carolina would thus reduce travel and other litigation costs related to producing documentary evidence and witnesses for trial, and would remove the need to litigate two cases simultaneously, which raise substantially similar claims, in two different districts.

## IV.    CONCLUSION

For the reasons set forth herein, the Texas Pension Funds respectfully request that the Court grant their motion to intervene, strike the improper PSLRA notice, require publication of a corrected notice, and enter an order transferring this case pursuant to 28 U.S.C. §1404(a) to the U.S. District Court for the Eastern District of North Carolina.

DATED:  March 28, 2019          Respectfully submitted,

SEEGER WEISS LLP

*s/ Christopher A. Seeger*
CHRISTOPHER A. SEEGER

DAVID R. BUCHANAN
55 Challenger Road, 6th Floor
Ridgefield Park, NJ  07660
Telephone:  973/639-9100
973/639-9393 (fax)

*Local Counsel for Proposed Intervenors San Antonio Fire & Police Pension Fund and El Paso Firemen & Policemen's Pension Fund*

- 28 -

ROBBINS GELLER RUDMAN
  & DOWD LLP
JACK REISE
STEPHEN R. ASTLEY
ELIZABETH A. SHONSON
SABRINA E. TIRABASSI
ANDREW T. REES
CONSTANTINE P. ECONOMIDES
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
jreise@rgrdlaw.com
sastley@rgrdlaw.com
eshonson@rgrdlaw.com
stirabassi@rgrdlaw.com
arees@rgrdlaw.com
ceconomides@rgrdlaw.com

*Attorneys for Proposed Intervenors San Antonio*
*Fire & Police Pension Fund and El Paso Firemen*
*& Policemen's Pension Fund*

- 29 -

## CERTIFICATE OF SERVICE

I, Christopher A. Seeger, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and papers copies will be sent to those indicated as non-registered participants on March 28, 2019.

_s/ Christopher A. Seeger_
CHRISTOPHER A. SEEGER