SEEGER WEISS LLP
CHRISTOPHER A. SEEGER
DAVID R. BUCHANAN
55 Challenger Road, 6th Floor
Ridgefield Park, NJ  07660
Telephone:  973/639-9100
973/639-9393 (fax)

*Local Counsel*

[Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| YUICHI MURAKAMI, Individually and on Behalf of All Others Similarly Situated, | ) ) ) Case No.:  3:19-cv-07377-MAS-LHG ) ) Hon. Michael A. Shipp |
| Plaintiff, | ) ) ) |
| vs. | ) ) |
| SYNEOS HEALTH, INC., ALISTAIR MACDONALD, GREGORY RUSH, and JASON MEGGS, | ) ) ) ) ) |
| Defendants. | ) ) ) |

## REPLY IN FURTHER SUPPORT OF TEXAS PENSION FUNDS' MOTION TO INTERVENE, STRIKE THE MURAKAMI LEAD PLAINTIFF DEADLINE, AND TRANSFER TO THE <u>EASTERN DISTRICT OF NORTH CAROLINA</u>

## TABLE OF CONTENTS

Page

I.     INTRODUCTION ...................................................................................................1

II.    ARGUMENT.........................................................................................................3

        A.     The Texas Pension Funds Can Intervene in this Action to Protect Their Interests as Lead Plaintiffs and the Interests of the Putative Class.........................3

        B.     Transfer of This Action to the Eastern District of North Carolina Is Appropriate ....................................................................................................7

        C.     The SEC Investigation into Syneos' Finances Is Ongoing.....................................8

        D.     The SEC Investigation and Murakami Action Overlap with the Texas Pension Funds' Claims in the *Vaitkuvienė* Action..................................................11

III.    CONCLUSION..................................................................................................12

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Century Aluminum Co. Sec. Litig.,*
   *No. C 09-1001 SI*, 2009 WL 2905962 (N.D. Cal. Sept. 8, 2009) ................................................ 4

*Donaldson v. United States*,
   400 U.S. 517 (1971) .................................................................................................................... 6

*Harris v. Pernsley*,
   820 F.2d 592 (3d Cir. 1987) ....................................................................................................... 6

*Hom v. Vale, S.A.*,
   No. 1:15-cv-9539-GHW, 2016 WL 880201 (S.D.N.Y. Mar. 7, 2016) ........................................ 6

*Horowitz v. Sunedison, Inc.*,
   No. 4:15 cv 1769 RWS, 2016 WL 1161600 (E.D. Mo. Mar. 24, 2016) ...................................... 6

*In re Bank of Am. Corp. Sec., Derivative & Employment Ret. Income Sec. Act (ERISA) Litig.*,
   No. 09 MDL 2058 (DC), 2010 WL 1438980 (S.D.N.Y. Apr. 9, 2010) ...................................... 4

*McIntire v. Mariano*,
   No. 18-cv-60075-BLOOM/Valle, 2019 WL 78982 (S.D. Fla. Jan. 2, 2019) ............................. 3

*Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*,
   72 F.3d 361 (3d Cir. 1995) .......................................................................................................... 6

*Peace Officers' Annuity & Benefit Fund of Ga. v. DaVita Inc.*,
   No. 17-cv-0304-WJM-NRN, 2019 WL 1403070 (D. Colo. Mar. 28, 2019) ............................ 12

*Thomas v. MagnaChip Semiconductor Corp.*,
   No. 14-cv-01160-JST, 2015 WL 3749784 (N.D. Cal. June 15, 2015) ....................................... 6

*Turner v. ShengdaTech, Inc.*,
   No. 11 Civ. 1918 (TPG), 2011 WL 6110438 (S.D.N.Y. Dec. 6, 2011) ..................................... 5

*United States v. Alcan Aluminum, Inc.*,
   25 F.3d 1174 (3d Cir. 1994) ....................................................................................................... 6

**Statutes**

15 U.S.C. §78u–4(a)(3)(A)(ii) ......................................................................................................... 6

28 U.S.C. §1404(a) ............................................................................................................... 2, 7, 13

Proposed intervenors San Antonio Fire & Police Pension Fund and El Paso Firemen & Policemen's Pension Fund ("Texas Pension Funds" or "Lead Plaintiffs") submit this reply in further support of their Motion to Intervene, Strike the Murakami Lead Plaintiff Deadline, and Transfer to the Eastern District of North Carolina filed on March 28, 2019 [ECF No. 6] ("Motion").

## I.      INTRODUCTION

Plaintiff's Memorandum of Law in Opposition to the Motion [ECF No. 9] ("Murakami Opp.") and the Response of Defendant Syneos Health, Inc. to the Motion [ECF No. 12] ("Def. Resp.") present four inaccurate assertions.  First, Murakami wrongly argues that the Texas Pension Funds cannot intervene in this action permissively or as a matter of right.  *See* Murakami Opp. at 3-4.  As the duly-appointed lead plaintiffs in the *Vaitkuvienė* Action[1] – an action with claims, defendants, and class members that overlap with this action – the Texas Pension Funds have an interest in this litigation.  Absent intervention, moreover, the Texas Pension Funds cannot adequately fulfill their lead plaintiff duties mandated by the Private Securities Litigation Reform Act ("PSLRA").  *See* Section II.A., *infra*.

Second, contrary to Murakami's assertions, this case should be transferred to the United States District Court for the Eastern District of North Carolina.  That

---

[1]  *Vaitkuvienė v. Syneos Health, Inc.*, No. 5:18-cv-00029-H-KS (E.D.N.C.) ("*Vaitkuvienė* Action").

court is already presiding over the first-filed *Vaitkuvienė* Action, and every factor under 28 U.S.C. §1404(a) supports transfer. Notably, Murakami ignores the Section 1404(a) factors, and Syneos concedes that, absent dismissal, this action should be transferred. *See* Murakami Opp. at 10-11; Def. Resp. at 4. Accordingly, transfer is appropriate. *See* Section II.B., *infra.*

Third, Syneos suggests that the investigations into its financial reporting have concluded without the need for any restatement of its prior financial results from 2017 or 2018. *See* Def. Resp. at 2-4. However, Syneos ignores that there are two investigations at issue: (1) an internal investigation by Syneos ("Internal Investigation"); and (2) a separate U.S. Securities and Exchange Commission investigation of Syneos ("SEC Investigation"). As explained below, the SEC Investigation remains ongoing, and it is still unknown whether that investigation will require any restatement of Syneos' prior financial results. *See* Section II.C., *infra*.

Finally, Murakami incorrectly contends that the SEC Investigation, as well as the concomitant allegations in the *Murakami* Action, are unrelated to the claims in the *Vaitkuvienė* Action. *See* Murakami Opp. at 4-8. In reality, the ongoing SEC Investigation involves documents from the period beginning January 1, 2017, and Syneos' financial reporting for that time period is squarely at issue in the *Vaitkuvienė* Action. *See* Section II.D., *infra*.

Thus, for the reasons stated in the Motion and herein, the Texas Pension Funds respectfully request that the Court grant the Motion in its entirety.[2]

## II.   ARGUMENT

### A.   The Texas Pension Funds Can Intervene in this Action to Protect Their Interests as Lead Plaintiffs and the Interests of the Putative Class

Citing a series of inapposite cases, Murakami contends that the Texas Pension Funds do not have an interest relating to the property or transaction at issue in this action, would not face an impairment to that interest, and cannot intervene in this action.  Murakami is wrong.[3]

A duly-appointed lead plaintiff can intervene as of right (or permissively) in a subsequently-filed duplicative class action and then seek transfer and consolidation.  *See McIntire v. Mariano*, No. 18-cv-60075-BLOOM/Valle, 2019 WL 78982, at *7 (S.D. Fla. Jan. 2, 2019) (collecting cases and granting intervention to lead plaintiffs from earlier-filed securities fraud action and then granting transfer).  Moreover, the right to intervention and consolidation does not dissipate where the

---

[2]   Although this Reply is limited to specific overarching issues raised by Murakami and Syneos, the Texas Pension Funds reserve all rights, preserve all arguments raised in the Motion, and continue to seek all relief requested in the Motion, including intervention, striking of the lead plaintiff notice and deadline, a corrective publication, and transfer for the purposes of consolidation.

[3]   As a threshold matter, Murakami does not contest, and therefore concedes, that the Motion was timely filed.

second action asserts additional claims. *See id.* at \*5 ("The Court agrees with the Intervenors that the fact that the McIntire Action alleges claims under the Securities Act of 1933 in addition to claims under the Exchange Act does not preclude consolidation." (citing *In re Century Aluminum Co. Sec. Litig.*, No. C 09-1001 SI, 2009 WL 2905962, at \*2 (N.D. Cal. Sept. 8, 2009))). Nor does that right dissipate where the second action includes an extended class period. *See id.* (collecting cases and noting that "courts have previously consolidated cases where actions contain overlapping class periods"). Indeed, a second-filed class action with overlapping claims or overlapping putative class members threatens to thwart the PSLRA's protections and impair the interests of a duly-appointed lead plaintiff:

> Here, the Southern District of New York has already appointed the Intervenors as the Co-Lead Plaintiffs in the Gingello Action, and has determined that they are the most capable of adequately representing the interest of the class members. Denying the Intervenors' Motion would undermine the lead plaintiff process. Moreover, having both cases proceed would promote dueling plaintiff counsel interests in different districts and would circumvent the protections instituted by the PSLRA. Therefore, the Court agrees with the Intervenors that their interests would be inadequately represented in the instant action.

*Id.* at \*7; *see also In re Bank of Am. Corp. Sec., Derivative & Employment Ret. Income Sec. Act (ERISA) Litig.*, No. 09 MDL 2058 (DC), 2010 WL 1438980, at \*2 (S.D.N.Y. Apr. 9, 2010) ("Lead Plaintiffs have the authority to decide what claims to assert on behalf of securities holders. Permitting other plaintiffs to bring additional class actions now, with additional lead plaintiffs and additional lead counsel, would

interfere with Lead Plaintiffs' ability and authority to manage the Consolidated Securities Actions.").

Under those principles, the Texas Pension Funds can intervene in this action. As the duly-appointed lead plaintiffs in the first-filed action, the Texas Pension Funds have an interest in managing the claims by putative class members against Syneos.  This duplicative action by Murakami covers the same putative class members and interferes with that interest.  Indeed, the *Murakami* Action's putative class period begins on May 10, 2017 – the same day as the class period in the *Vaitkuvienè* Action.  The only difference is that Murakami seeks to expand the end of the class period from November 8, 2017, to February 27, 2019.  However, the Texas Pension Funds have the sole prerogative to determine the appropriate class period and prosecute claims on behalf of that putative class, and Murakami cannot usurp that role.  Hence, the Texas Pension Funds have the ability to intervene in this action, to seek transfer and consolidation, and to determine the scope of the allegations and claims against the defendants.[4]

---

[4]    For these reasons, Murakami should not be permitted to republish notice or otherwise reinitiate a lead plaintiff appointment process.  Courts disfavor that practice, which undermines the ability of duly-appointed lead plaintiffs (*e.g.*, the Texas Pension Funds) to prosecute the class action in accordance with the policies underlying the PSLRA. *See, e.g.,  Turner v. ShengdaTech, Inc.*, No. 11 Civ. 1918 (TPG), 2011 WL 6110438, at *3 (S.D.N.Y. Dec. 6, 2011) ("Courts . . . disfavor republication of notice under PSLRA when a class period is extended beyond the period contained in the first-filed securities class action.  This antagonism derives from the text of the law, which specifies that where a later action asserts substantially

Finally, in contesting the Texas Pension Funds' intervention, Murakami ignores the applicable principles and, instead, relies on a series of intervention cases that did not involve securities claims under the PSLRA. *See Harris v. Pernsley*, 820 F.2d 592, 594-603 (3d Cir. 1987) (considering whether District Attorney could intervene in action brought by prisoners against City of Philadelphia and Philadelphia officials responsible for prisons); *Donaldson v. United States*, 400 U.S. 517, 530-36 (1971) (considering whether taxpayer may intervene in enforcement proceedings brought by IRS to enforce summonses seeking a production of records from taxpayer's former employer); *United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1178 (3d Cir. 1994) (considering "whether a party who has entered into a consent decree with the Environmental Protection Agency for the cleanup of a superfund site may intervene in subsequent litigation over the same site"); *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc*., 72 F.3d 361, 365 (3d Cir. 1995) (considering whether condominium owners could intervene in litigation

---

the same claim as a first-filed action, 'only the plaintiff or plaintiffs in the first filed action shall be required to cause notice to be published.'" (quoting 15 U.S.C. §78u–4(a)(3)(A)(ii))); *see also Horowitz v. Sunedison, Inc.*, No. 4:15 cv 1769 RWS, 2016 WL 1161600, at *2 (E.D. Mo. Mar. 24, 2016) (holding that republication of notice was not required)*; Hom v. Vale, S.A.*, No. 1:15-cv-9539-GHW, 2016 WL 880201, at *4 (S.D.N.Y. Mar. 7, 2016) (same); *Thomas v. MagnaChip Semiconductor Corp.*, No. 14-cv-01160-JST, 2015 WL 3749784, at *3-*5 (N.D. Cal. June 15, 2015) (same). Accordingly, the Court should strike Murakami's improper PSLRA notice and require publication of a corrected notice.

between condominium association and construction company over hurricane repairs).  Those cases are inapposite in this context, where there are two competing securities fraud class actions subject to the PSLRA.  A proper intervention analysis under apposite precedent confirms that the Texas Pension Funds can intervene in this action in order to protect their interests and fulfill their duties to class members.

**B.    Transfer of This Action to the Eastern District of North Carolina Is Appropriate**

Murakami does not address the factors under 28 U.S.C. §1404(a) relating to transfer.  *See* Murakami Opp. at 10-11.  Murakami, therefore, has waived any opposition to the detailed reasons set forth in the Motion that transfer is warranted under 28 U.S.C. §1404(a).  Indeed, transfer to the United States District Court for the Eastern District of North Carolina – which is presiding over the first-filed case against Syneos and which already appointed the Lead Plaintiffs – can determine whether consolidation is appropriate to fairly and efficiently adjudicate the overlapping allegations and class periods at issue.  *See* Mot. at 17-28.  Even Syneos agrees that, absent dismissal, the *Murakami* Action should be transferred.  *See* Def. Resp. at 1-2, 4 (asserting that "this Court should rule on the transfer Motion before addressing any motion that might be filed seeking appointment as Lead Plaintiff here" and arguing, as an alternative to *sua sponte* dismissal, that this case should be transferred to the Eastern District of North Carolina).  Thus, once the Texas Pension Funds are permitted to intervene, this case should be transferred.

### C.    The SEC Investigation into Syneos' Finances Is Ongoing

The *Murakami* Action's allegations focus on Syneos' Internal Investigation and the separate SEC Investigation, both of which Syneos publicly disclosed on February 27, 2019. *See* Murakami Class Action Complaint [ECF No. 1] at ¶¶27-29. Syneos also disclosed that it was delaying the filing of its Form 10-K for 2018. *See id.* at ¶27.

Syneos now suggests that all questions surrounding the Company's financial filings in 2017 and 2018 are resolved. *See* Def. Resp. at 2-4. Specifically, on March 18, 2019 – after the *Murakami* Action was filed – Syneos filed its Form 10-K and disclosed that the Internal Investigation had concluded without the need for Syneos to restate any financials. *See id.* at 3-4. Syneos further disclosed that the Company's auditor, Deloitte & Touche LLP ("Deloitte"), issued an opinion that Syneos' financial statements for 2017 and 2018 did not require any restatement. *See id.* Relying on those disclosures, Syneos maintains that the *Murakami* Action's allegations are baseless and effectively mooted. However, Syneos' contentions are misplaced.

Syneos is conflating its Internal Investigation with the separate SEC Investigation. Although Syneos has concluded its Internal Investigation, filed its 10-K, and obtained an audit opinion from Deloitte, the SEC Investigation remains

ongoing.  Notably, Syneos conceded as much in its recent quarterly conference call

held on March 18, 2019:

> **John Kreger, Analyst**:  And another similar one, are you able to expand it all on your commentary with the SEC either in terms of substance or maybe timing in terms of how their process will proceed?
>
> **Alistair Macdonald, Chief Executive Officer**: No, no, really. I mean we've told you pretty much all that we had. We got the letter from Division of Enforcement in 21st of Feb and we've had some (technical difficulty) dialog with them and we've -- we used kind of some of the areas they wanted to look at, which we put out in the press release around book-to-bill, revenue controls, and forecast to guide that internal review. So you can get a sense from that of where we've been laser-focused as we've gone back over kind of the 606 implementation et cetera. So -- and, as you know, back to what Jason said, we didn't change any numbers, we are pretty happy to have got through that process and be back where we are today following that and doing the earnings.
>
> *    *    *
>
> **Robert Jones, Analyst**:  Great. Thanks for the questions. I guess just to go back, Alistair, not to beat this to death, but it's not something we come across all the time. It sounds like you're clearly very comfortable that you identified and rectified the material weakness and that didn't result in any restatements or changes to filings, but *is there any sense you have from the SEC on, I guess, A, whether or not this addresses what their concerns or/and probably, more importantly, when they would proceed or wrap up their side of this investigation*?
>
> **Alistair Macdonald, Chief Executive Officer**: Hey, Bob. No, I mean, what we said in the press release that we pushed out in the 12b-25, I think it's the number of the form and what we said today that's all we have. *We are cooperating with the SEC in anything that they want, probably anything that we're concerned about in that regard. We don't know how long it will take or what it will constitute, but we are ready to continue that collaboration with them and that cooperation with them and get through it however long it takes.*

**Jason Meggs, Chief Financial Officer**: Yeah. And, Bob, obviously, Jason here, we will -- *as appropriate, we will update the disclosures as we move through the periods, through the quarters, as necessary.*

\*      \*      \*

**Daniel Brennan, Analyst**: Great, thanks. Thanks for taking the question. I just wanted to ask a question on the -- back to the investigation, if you don't mind. Can you just comment that this was a formal or informal investigation? And did M&A from the SEC is like normal review like your -- of your financials, which we think is necessary as part of Sarbanes-Oxley or do they come from somewhere else maybe like a whistleblower or third-party?

**Alistair Macdonald, Chief Executive Officer**: So, Dan, we have talked about -- that came from Division of Enforcement. So the letter arrived before we filed the K and I don't want to speculate on why we came to their attention. *I mean, we'll find out as we get more engagement from the SEC as we go through the investigation. We've told you everything we've got.* So we'll continue to be transparent and we've -- we did the extra work on the investigation, independent investigation by the Audit Committee, because we wanted to make sure that we implemented 606. We haven't missed anything fundamental and our (technical difficulty) so and that's what we've got and *we are continuing to cooperate and engage with the SEC on their timeframe, but we don't know what that is yet and we don't know what they come and look at.*

*See* Def. Resp., Exhibit 2 [ECF No. 12-2] at 7-10, 19-20 (emphasis added).

As admitted by Syneos, therefore, the SEC Investigation was not resolved by the conclusion of Syneos' Internal Investigation or by Deloitte's opinion.[5]

---

[5]    Indeed, the Internal Investigation focused on Syneos' adoption of a new revenue recognition process (ASC 606) that began on January 1, 2018, whereas the SEC Investigation includes financial periods that began in January 1, 2017, prior to Syneos' adoption of ASC 606. *See* Def. Resp. at 4 n.1. Therefore, it is indisputable that the Internal Investigation and SEC Investigation are separate.

Consequently, Syneos cannot speculate as to the outcome of the SEC Investigation or disregard the possible need to restate some or all of Syneos' 2017 or 2018 financial results.

**D.    The SEC Investigation and Murakami Action Overlap with the Texas Pension Funds' Claims in the *Vaitkuvienė* Action**

Murakami asserts that his allegations – which stem from the ongoing SEC Investigation – are unrelated to the *Vaitkuvienė* Action. *See* Murakami Opp. at 4-8. That assertion is incorrect. The SEC Investigation directly relates to the Texas Pension Funds' allegations in the *Vaitkuvienė* Action.

Although the full details and scope of the SEC Investigation are not public, Syneos has disclosed that the SEC Investigation involves "the Company's revenue accounting policies, internal controls and related matters," as well as "certain documents for the periods ***beginning with January 1, 2017***." *See* Motion, Exhibit C [ECF No. 6-5] at 2. In the *Vaitkuvienė* Action, the Texas Pension Funds allege that Syneos made misleading statements when, on May 10, 2017, Syneos first released its financial results for the financial quarter ***beginning January 1, 2017***. *See* Motion, Exhibit A [ECF No. 6-3] at ¶¶96-140. Plaintiffs further allege that Defendants continued those revenue-related misrepresentations (and/or omissions) through November 9, 2017. *See id.* Accordingly, the SEC Investigation – and, in turn, the *Murakami* Action – focuses on the same financial statements and time periods that are at issue in the *Vaitkuvienė* Action.

- 11 -

In sum, the *Murakami* Action and *Vaitkuvienė* Action share allegations (*e.g.*, financial improprieties at Syneos in the periods beginning January 1, 2017) on behalf of overlapping class members (*e.g.*, Syneos investors on or after May 10, 2017), against overlapping defendants (*e.g.*, Syneos, MacDonald, and Rush). As the SEC Investigation proceeds and reveals any additional wrongdoing by Defendants, the Texas Pension Funds can amend their complaint to include additional allegations or extend the class period to encompass the full scope of Defendants' common course of fraudulent conduct.[6]

## III. CONCLUSION

For the reasons set forth in the Motion and herein, the Texas Pension Funds respectfully request that the Court grant their motion to intervene, strike the improper PSLRA notice, require publication of a corrected notice, and enter an

---

[6] Murakami asserts, without elaboration, "that presumably the *Vaitkuvienė* plaintiffs presumably lack standing to prosecute" claims from the extended class period in the *Murakami* Action. *See* Murakami Opp. at 1. That assertion is baseless. The Texas Pension Funds have alleged that they suffered losses within the putative class period. Nothing more is required for standing, even if the Texas Pension Funds chose to extend the class period. *See, e.g.*, *Peace Officers' Annuity & Benefit Fund of Ga. v. DaVita Inc.*, No. 17-cv-0304-WJM-NRN, 2019 WL 1403070, at *7 (D. Colo. Mar. 28, 2019) ("Plaintiffs have adequately pled individual standing for their own claims occurring within the putative class period. This suffices, at this juncture in the proceedings, for Plaintiffs to have standing to assert claims on behalf of the entire class, predicated as such claims are on the Defendants' alleged common course of fraudulent conduct undertaken throughout the Class Period.").

order transferring this case pursuant to 28 U.S.C. §1404(a) to the United States District Court for the Eastern District of North Carolina.

DATED:  April 29, 2019          Respectfully submitted,

                                SEEGER WEISS LLP

                                _____s/ Christopher A. Seeger_____
                                CHRISTOPHER A. SEEGER

                                DAVID R. BUCHANAN
                                55 Challenger Road, 6th Floor
                                Ridgefield Park, NJ  07660
                                Telephone:  973/639-9100
                                973/639-9393 (fax)

                                *Local Counsel for Proposed Intervenors San*
                                *Antonio Fire & Police Pension Fund and El*
                                *Paso Firemen & Policemen's Pension Fund*

                                ROBBINS GELLER RUDMAN
                                   & DOWD LLP
                                JACK REISE
                                STEPHEN R. ASTLEY
                                ELIZABETH A. SHONSON
                                SABRINA E. TIRABASSI
                                ANDREW T. REES
                                CONSTANTINE P. ECONOMIDES
                                120 East Palmetto Park Road, Suite 500
                                Boca Raton, FL  33432
                                Telephone:  561/750-3000
                                561/750-3364 (fax)
                                jreise@rgrdlaw.com
                                sastley@rgrdlaw.com
                                eshonson@rgrdlaw.com
                                stirabassi@rgrdlaw.com
                                arees@rgrdlaw.com
                                ceconomides@rgrdlaw.com

- 13 -

*Attorneys for Proposed Intervenors San Antonio Fire & Police Pension Fund and El Paso Firemen & Policemen's Pension Fund*

- 14 -

## CERTIFICATE OF SERVICE

I, Christopher A. Seeger, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and papers copies will be sent to those indicated as non-registered participants on April 29, 2019.

DATED:  April 29, 2019

_s/ Christopher A. Seeger_
CHRISTOPHER A. SEEGER

- 15 -